UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No:

| | |
|---|---|
| Justin Bradley Roehning, ) | |
|  ) | |
|     Plaintiff, ) | |
|  ) | |
| vs. ) | COMPLAINT FOR |
|  ) | DECLARATORY JUDGMENT |
| United States of America, ) | |
|  ) | |
|     Defendant. ) | |

COMES NOW the Plaintiff, by and through the undersigned counsel, complaining of the Defendant, and shows the following:

### PARTIES

1. The Plaintiff is an individual who is a citizen and resident of the County of Scott, State of Minnesota.

2. The Defendant is the United States of America.

### JURISDICTION AND VENUE

3. The court has subject matter jurisdiction over the action, because the claim stated herein arises under the laws of the United States and falls within the court's federal question jurisdiction, pursuant to 28 U.S.C. §1331.

4. The court has personal jurisdiction over the Defendant.

1

5. Venue is proper pursuant to 28 U.S.C. §1391(e)(1) because the Defendant is the United States and the Plaintiff resides in this district.

## BACKGROUND AND FACTUAL ALLEGATIONS

6. The following is presented upon information and belief and is based upon information received from Plaintiff and court and/or other records, and it is believed Plaintiff would testify consistent herewith.

## STATEMENT OF FACTS

7. Plaintiff, Justin Roehning, is thirty eight (38) years old. He is not married. He resides in his own home in the County of Scott, State of Minnesota. He has two (2) children.

7. He was born in Minnesota. He grew up Savage, Minnesota. He is a high school graduate.

8. Mr. Roehning has also obtained some higher education. From 2001 to 2004, he attended Dunwoody. He graduated with an A.A. in Sciences and Electrical Construction and Maintenance. Currently, he undergoes yearly continuing education classes.

9. Currently, Mr. Roehning is employed with an electrical company. He has been employed here over nine (9) years. His title is Journeyman Electrician. His duties include

managing employees, and managing the electrical portion of commercial construction.

10. Mr. Roehning does not have any significant physical health issues. He does. Not use illegal drugs. He has never had any mental health hospitalizations or commitments.

11. Mr. Roehning has no juvenile record.

12. As for adult criminal history, in or about 2003, in case number 70-2003-14434, out of the County of Scott, State of Minnesota, Mr. Roehning was charged with 3rd degree felony assault, and misdemeanor 5th degree assault. Ultimately, as shown by the public on line records, Mr. Scott pleaded guilty to 3rd degree felony assault, but received a stay of adjudication, meaning he was never convicted, and the charge was ultimately dismissed, and on June 24, 2005, he was discharged from probation. See attached Register of Actions. This means that he was never convicted of any felony. In the same case, Mr. Roehning also pleaded guilty to 5th degree misdemeanor assault and was convicted of same. Accordingly, in this case Mr. Roehning was only convicted of a misdemeanor assault.

13. Under Minnesota law, when a person receives a stay of adjudication, he is not convicted of the crime.

14. Mr. Roehning has never been convicted of a felony.

15. Mr. Roehning has never been convicted of a felony crime of violence.

16. As a child, Mr. Roehning had positive experiences with firearms. He went hunting with his father often. They hunted for deer and duck. He used rifles and shotguns.

17. The Scott County Sheriff's Office issued Mr. Roehning a permit to carry in 2015 and 2020. Accordingly, the State of Minnesota has declared Mr. Roehning legal to possess firearms under state and federal law.

18. In April 2021, Mr. Roehning went into a gun shop, and attempted to purchase a firearm. He received a NICs denial.

19. Mr. Roehning underwent a "NICs appeal." After 3 months, the FBI sustained its denial of Mr. Roehning's right to purchase a firearm under the Second Amendment of the United States Constitution.

20. Federal law, Title 18 U.S.C. §922(g)(1) provides that it shall be unlawful for any person:

> who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . . 18 U.S.C. §922(g)(1).

21. Federal law also provides as follows (emphasis added):

> The term "crime punishable by imprisonment for a term exceeding one year" does not include--. . .
>
> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

4

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms. 18 U.S.C. §921(a)(20).

21. Herein, Mr. Roehning has not been <u>convicted</u> of any crime punishable by imprisonment for a term exceeding one year, because he received a stay of adjudication.

22. Accordingly, the NICs denial is erroneous.

23. Mr. Roehning would like to enjoy his Second Amendment rights to keep and bear arms.

<u>Role of Courts</u>

24. Courts are "'independently responsible for safeguarding the rights of [our] citizens.' State courts are, and should be, the first line of defense for individual liberties within the federalist system." <u>State v. Gray</u>, 413 N.W.2d 107, 111 (Minn. 1987)(emphasis added)(quoting <u>State v. Fuller</u>, 374 N.W.2d 722, 726-27 (Minn. 1985)).

<u>Second Amendment Generally</u>

25. The right to possess firearms, the right to keep and bear arms, is a fundamental right. See <u>District of Columbia v. Heller</u>, 554 U.S. ___, (2008). "'It was not

necessary that the right to bear arms should be granted in the Constitution, for it had always existed.'" Heller, 554 U.S. ___ (quoting J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891)). In United States v. Cruikshank, 92 U.S. 542, "the opinion explained that the right 'is not a right granted by the Constitution [or] in any manner dependent upon that instrument for its existence. The second amendment . . . means no more than that it shall not be infringed by Congress.'" Heller, 554 U.S. ___ (quoting Cruikshank, 92 U.S. at 553).

Self Defense

26. The first reason for the Second Amendment is the right of self defense, defense of family, property, etc. In regard to self defense:

> The right to self-defence is the first law of nature: in most governments it has been the study of rulers to confine the right within the narrowest limits possible. Wherever standing armies are kept up, and the right of the people to keep and bear arms is, under any colour or pretext whatsoever, prohibited, liberty, if not already annihilated, is on the brink of destruction.'"

Heller, 554 U.S. ___ (quoting 1 Tucker's Blackstone 143 at App. 300)).

Defense of the United States

27. To have men armed, on the ground, is also needed for adequate protection of the United States and deterrence of enemies. Historically, at the time frame of the

6

enactment of the Second Amendment, "'Ordinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time.'"[1]  Heller, 554 U.S. ___ (quoting Miller, 307 U.S. at 179)).  At the time of the ratification of the Second Amendment, the body of all citizens capable of military service, were expected to bring the sorts of lawful weapons that they possessed at home to militia duty.  Heller, 554 U.S. ___ .  This way, in the event the United States was ever attacked, men would be armed and ready to defend the United States.  Interestingly, this evidently also has a deterrent function.  This is shown by a quote from Commander in Chief of Japan during World War II, Isoroku Yamamoto.  Commander Yamamoto is quoted as saying:

> You cannot invade the mainland United States.  There would be a rifle behind every blade of grass.

What this shows is that enemies of the United States are deterred from attacking the United States because of the perception that the citizens of the United States are armed with firearms and will shoot and kill enemies who attack.  Thus, the Second Amendment clearly also provides a deterrent effect on enemies of the United States.

---

[1].  The undersigned has also read that at the time of the promulgation of the Second Amendment, there were statutes that required citizens to own ammunition, and if they did not, they were fined.

<u>Tyrants and Tyranny</u>

28. Early on, the Second Amendment was discussed by the judge and professor, Thomas Cooley, who wrote a massively popular 1868 Treatise on Constitutional Limitations. <u>Heller</u>, 554 U.S. ___. He wrote that the "Second Amendment . . . 'was adopted with some modification and enlargement from the English Bill of Rights of 1688, where it stood as a protest against arbitrary action of the overturned dynasty in disarming the people.'" <u>Heller</u>, 554 U.S. ___ (quoting Cooley, at 270)).

> The right of the whole people, old and young, men, women and boys, and not militia only, to keep and bear arms of every description, and not such merely as are used by the militia, shall not be infringed, curtailed, or broken in upon, in the smallest degree . . . Our opinion is, that any law, State or Federal, is repugnant to the Constitution, and void, which contravenes this right, originally belong to our forefathers, trampled under foot by Charles I and his two wicked sons . . . ."

<u>Heller</u>, 554 U.S. ___ (quoting <u>Nunn v. State</u>, 1 Ga. 243, 251 (1846)).

29. With respect to tyrants and tyranny, "[o]ne of the ordinary modes, by which tyrants accomplish their purposes without resistance, is, by disarming the people, and making it an offence to keep arms,[2] and by substituting

---

[2]. It should be noted that the type of arms U.S. citizens should be allowed to bear should be determined by what the enemies of the U.S. would have: if our enemies have machine guns (or what have you), then obviously, in order to adequately defend the U.S., U.S. citizens should have machine guns.

8

a regular army in the stead of a resort to the militia." Heller, 554 U.S. \_\_\_ (quoting A Familiar Exposition of the Constitution of the United States §450 (reprinted in 1986)).

30.  History shows that the way tyrants had eliminated a militia consisting of all the able-bodied men was not by banning the militia but simply by taking away the people's arms, enabling a select militia or standing army to suppress political opponents.  Heller, 554 U.S. \_\_\_.  An example is that between the Restoration and the Glorious Revolution, the Stuart Kings Charles II and James II succeeded in using select militias loyal to them to suppress political dissidents, in part by disarming their opponents.  Heller, 554 U.S. (citing J. Malcolm, To Keep and Bear Arms 31-53 (1994); l. Schwoerer, The Declaration of Rights, 1689, p. 76 (1981)).  Under the auspices of the 1671 Game Act, for example, James II had ordered general disarmaments of region home to his religion enemies.[3]  Heller, 554 U.S. \_\_\_ (citing Malcolm, 103-106)).

31.  Lastly, at the time of the founding, as now, to "'bear'" means to "'carry.'"  Heller, 554 U.S. \_\_\_ (citing Plaintiff 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989).

---

[3].    History shows that each persecuted the other (Catholics and Protestants), and some would say both were wrong.

9

32. Again, the Second Amendment is a codification of a pre-existing right, and it includes the right of self defense, defense of the State, repelling invasions and suppressing insurrections, and defense against tyranny. Heller, 554 U.S. ___ (citing 1 The Papers of Thomas Jefferson 344 n.8 (J. Boyd ed. 1950)).  It also provides deterrence of attacks by enemies of the United States.

Analysis

33. Herein, this Court should enter a judgment declaring that the FBI is directed to correct the erroneous information in NICS, pursuant to 28 U.S.C. §2201, and, directing that the purchase of firearms and ammunition by Plaintiff in Minnesota be approved by NICs.

34. The Plaintiff has no criminal conviction(s) under state or federal law disqualifying him from possessing firearms or ammunition.

35. The Plaintiff is not otherwise barred from possessing firearms or ammunition by any category of prohibited person under 18 U.S.C. §922(g).

36. The NICs denial to Plaintiff in his attempt to purchase a firearm in or about 2021 was erroneous and wrongful.

37. The NICs denial of Plaintiff's NICs appeal in or about 2021 was erroneous and wrongful.

38. The denials were based upon erroneous information and the erroneous information is that the Scott County case is a bar to possession of firearms.

39. The matter described above is an actual case and controversy between the parties.

40. The Plaintiff requests entry of an order directing that the erroneous information be corrected, pursuant to 18 U.S.C. §925A.

41. The Plaintiff also requests the Court enter a judgment declaring that the FBI is directed to correct the erroneous information in NICS, pursuant to 28 U.S.C. §2201.

42. The Plaintiff requests entry of an order directing that the purchase of firearms and ammunition by Plaintiff in Minnesota be approved by NICs.

## AWARD OF ATTORNEY'S FEE

43. The allegations contained in all preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

44. The wrongful denial of Plaintiff's attempt to purchase a firearm and wrongful denial of his NICs

appeal forced him to hire a lawyer and incur attorney's fees.

45. Plaintiff's attorney knows that plaintiffs cannot afford to pay the normal hourly rates for such a case, so reduced her attorney's fees dramatically.

46. The governing statute herein, provides for an award of attorney's fees.

47. The governing statute herein, provides for an award of attorneys' fees so that plaintiffs, wrongfully denied their Second Amendment constitutional rights to keep and bear arms, can bring suit, even where they cannot afford to, and, to provide payment of attorneys' fees, so that attorneys are also able to and will bring such cases.  The attorney fee award exists to protect Constitutional rights, and to ensure that attorneys will take such cases to protect Constitutional rights, even when people cannot afford to hire a lawyer.  These are not pro bono cases, and they are not low fee cases. Attorneys handling such cases are to be paid in full. If attorneys cannot be paid, then attorneys cannot bring such cases, and, plaintiffs will wrongfully be denied their Second Amendment constitutional rights, and have no remedy.  In order to adequately protect

the United States Constitution, an attorney fee award was inserted into this statute, and courts must issue attorney fee awards to ensure adequate protection of Constitutional rights.

48. Accordingly, this Court should award an attorney's fee in this case.  The award for an attorney's fee should be addressed and made after any determination that the NICs denial was erroneous.  An affidavit in support of an attorney's fee award, and/or a hearing thereon, is respectfully requested to be allowed and should be permitted.

49. The Plaintiff requests the Court order the Defendant to pay a reasonable attorney's fee to the Plaintiff's lawyer as part of the costs, pursuant to 18 U.S.C. §925.A.

50. For all of the foregoing reasons, Plaintiff seeks an order requiring that he be permitted to purchase firearm(s), and, correction of the NICs record(s), so that he is not prohibited in the future from purchasing firearm(s) and ammunition.

WHEREFORE, the Plaintiff demands judgment against the Defendant as follows:

(1) For an order directing the Defendant, through the FBI, to correct the erroneous information in NICS,

   namely, the information stating erroneously that the Plaintiff has been convicted of a crime making him ineligible to possess a firearm in the State of Minnesota, pursuant to 18 U.S.C. §925A;

(2) For a judgment declaring that the Defendant, through the FBI, is directed to correct the erroneous information in NICS, namely, the information stating erroneously that the Plaintiff has been convicted of a crime making him ineligible to possess a firearm in the State of Minnesota, pursuant to 28 U.S.C. §2201; and

(3) For the award of a reasonable attorney's fee as part of the costs, pursuant to 18 U.S.C. §925A; and

(4) For such other and further relief this Court deems just and equitable.

Dated: 04/05/2022                    Respectfully submitted,

                                By:   /s/ Lynne Torgerson, Esq.
                                      Lynne Torgerson, Esq.
                                      Atty. Reg. No: 208322
                                      222 South Ninth Street
                                      Suite 1600
                                      Minneapolis, Minnesota 55402
                                      (612) 339-5073
                                      Attorney for Plaintiff
                                      L@Lynnetorgerson.com