UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JUSTIN BRADLEY ROEHNING, | Case No. 22-CV-0823 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Lynne Torgerson, TORGERSON LAW OFFICE, for plaintiff.

Ana H. Voss, UNITED STATES ATTORNEY'S OFFICE, for defendant.

Plaintiff Justin Roehning tried to buy a firearm but was unable to do so because an agency of the State of Minnesota had mistakenly reported that Roehning had been convicted of a felony. As a result of that mistake, Roehning failed his federal background check. Roehning filed this lawsuit against the United States. The government investigated the matter, discovered and corrected the error, and authorized Roehning to purchase the firearm. Roehning then bought the gun.

That should have been the end of the matter, but Roehning has declined to dismiss his lawsuit—mainly, it seems, because Roehning's attorney wishes to pursue an award of attorney's fees. The United States now moves to dismiss, arguing that the case is moot and that Roehning's attorney cannot recover her fees. The Court agrees.

I.  BACKGROUND

The Brady Handgun Violence Prevention Act of 1993 ("Brady Act"), Pub. L. No. 103-159, 107 Stat. 1536, established a nationwide background-check process for firearms purchases.  Under the Brady Act, a traditional firearms dealer (such as a gun shop) must obtain a license from the federal government, *see* 18 U.S.C. § 923(a), and a customer seeking to purchase a firearm from such a federal firearms licensee ("FFL") must pass a background check.  *See id.* § 922(t).  Typically, before completing a sale, the FFL requests an instant background check regarding the prospective purchaser from the National Instant Criminal Background Check System ("NICS"), which is administered by the Federal Bureau of Investigation ("FBI").  *See* 28 C.F.R. §§ 25.3, 25.6.  After receiving a background-check request, the NICS searches for the prospective purchaser's identity in three national databases—databases that include both state and federal criminal and public-safety records[1]—to determine if the prospective purchaser is disqualified from acquiring a firearm by a felony conviction or by some other reason.

---

[1]These three databases are (1) the Interstate Identification Index, "which provides access to criminal history records," Cochran Decl. ¶ 4; (2) the National Crime Information Center ("NCIC"), which is a "nationwide computerized information system of criminal justice data established by the FBI as a service to local, state, and Federal criminal justice agencies," 28 C.F.R. § 25.2; and (3) the NICS Index, which is a database managed by the FBI "containing information provided by Federal and state agencies about persons prohibited under Federal law from receiving or possessing a firearm." *Id.*

*See* 28 C.F.R. § 25.6(c)(1). Depending on the results of the search, the NICS sends the FFL an instruction to proceed with, delay, or deny the firearm purchase. *See id.*

Errors are inevitable, and thus an eligible purchaser is occasionally denied the right to purchase a firearm. But such a purchaser is not without recourse. The purchaser can appeal the "accuracy of the record upon which the denial is based" directly with the FBI. 28 C.F.R. § 25.10(c). The purchaser can also apply to the FBI for a Voluntary Appeal File ("VAF"), which is a record of the purchaser's identity maintained by the FBI under a Unique Personal Identification Number ("UPIN"). If an eligible purchaser provides a UPIN when buying a firearm from an FFL, there is little chance of a mistaken denial or an excessive delay, because the UPIN directs the NICS to the precise records that are associated with that purchaser's confirmed identity. *See id.* § 25.10(g); Cochran Decl. ¶ 8. Finally, the purchaser can "bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States . . . for an order directing that the erroneous information be corrected or that the transfer be approved." 18 U.S.C. § 925A. Section 925A allows a "prevailing party" to recover attorney's fees. *Id.*

Roehning attempted to purchase a firearm in April 2021.[2] The FFL requested an instant background check from the NICS. Roehning was eligible to purchase the firearm—his criminal record consisted of a single misdemeanor conviction—but the NICS nevertheless advised the FFL that Roehning was not eligible to purchase a firearm. *See* Compl. ¶¶ 12–15, 18. Roehning appealed the decision to the FBI and applied for a VAF, but had no success. *See id.* ¶ 19; Cochran Decl. ¶ 8. Finally, Roehning brought this lawsuit under 18 U.S.C. § 925A, seeking an order directing the FBI to correct the erroneous information that led to his firearm-purchase denial, an order directing the FBI to approve his purchase of firearms and ammunition, and an award of attorney's fees. *See* Compl. ¶¶ 33, 40–41, 50.

In May 2022—about a month after Roehning filed this lawsuit and more than a year after he tried to purchase the firearm—the FBI audited the instant background check that had been done on Roehning. *See* Cochran Decl. ¶ 6. The audit revealed that the Minnesota Bureau of Criminal Apprehension ("MBCA") had erroneously reported that Roehning had been convicted of a felony, when in fact he had been convicted of only a misdemeanor. *See* Cochran Decl. ¶¶ 6–7. The FBI asked the MBCA to correct its records (which the MBCA did), and the FBI corrected its own records. *See id.* The FBI then sent three letters to Roehning informing him that it had granted his appeal, that he

---

[2]The Court relies on the facts pleaded in the complaint, which the government has not disputed.

was authorized to purchase a firearm, and that it had granted his VAF application and provided him with a UPIN that he could use to facilitate future firearms purchases. *See* Voss Decl. Exs. 1–3.  To ensure that Roehning would not again be mistakenly denied the right to purchase a firearm, the FBI ran a test search of Roehning's name across the three NICS databases in June 2022, and the NICS returned no results that would preclude Roehning from purchasing a firearm.  *See* Cochran Decl. ¶ 9.

The United States has now moved to dismiss Roehning's complaint as moot.  At oral argument, Roehning confirmed that he had successfully purchased the firearm.

## II.  ANALYSIS

### A.  Standard of Review

The United States has moved to dismiss Roehning's complaint under Rule 12(b)(1), arguing that his claims are moot and that therefore this Court lacks jurisdiction.  When deciding a motion under Rule 12(b)(1), a court "must distinguish between a 'facial attack' and a 'factual attack'" on the court's jurisdiction.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  In ruling on a facial attack, the court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6.  "Conversely, in a factual attack, 'the existence of subject

matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Branson Label*, 793 F.3d at 914–15 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  Here, the United States is raising a factual challenge to the Court's jurisdiction, so the Court will look beyond the complaint and consider the affidavits and exhibits submitted by the parties.  *See Osborn*, 918 F.2d at 728 n.4 ("The district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1).") (citations omitted).

### B. Mootness

"The doctrine that federal courts may not decide moot cases 'derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  When "because of . . . a change in circumstances . . . a federal court can no longer grant effective relief," the dispute has lost its life and the case is moot.  *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)

(quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)). "If an issue is moot in the Article III sense, [courts] have no discretion and must dismiss the action for lack of jurisdiction." *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005).

This case is obviously moot. Roehning brought suit under § 925A. That statute authorizes only two forms of relief: (1) an order "directing that the erroneous information be corrected" and (2) an order "that the transfer be approved." 18 U.S.C. § 925A.[3] Neither form of relief would have any effect on Roehning. The erroneous information has already been corrected, *see* Cochran Decl. ¶¶ 6–7, and the firearm has already been purchased. An order directing the United States to correct the already-corrected information or approve the already-approved purchase "would be the very definition of ineffectual relief." *Noem v. Haaland*, 41 F.4th 1013, 1016 (8th Cir. 2022); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016) ("Here, no live controversy in the ordinary sense remains because no court is now capable of granting the relief petitioner seeks."). Put another way, because Roehning has already received all of the relief he seeks under § 925A,[4] he no longer has an "injury . . . likely to be

---

[3] The statute also authorizes the Court to award attorney's fees to a prevailing party. But an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990).

[4] Roehning's attorney occasionally refers to the importance of vindicating Second Amendment rights. The Court emphasizes, however, that Roehning did not bring a
(continued...)

redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  In the absence of such an injury, this Court "must dismiss the action for lack of jurisdiction."  *Ali*, 419 F.3d at 724.

Although this action is moot, Roehning argues that two exceptions to the mootness doctrine apply and thus that the Court continues to have jurisdiction.  The Court now turns to those two exceptions.

### 1.  Voluntary Cessation

Roehning first cites the voluntary-cessation exception to the mootness doctrine.  Under that exception, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Already, LLC*, 568 U.S. at 91 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  "Instead, 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  "A defendant faces a heavy burden to establish mootness by way of voluntary cessation, but the standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct."  *Prowse v. Payne*, 984 F.3d 700, 703

---

[4](...continued)
claim for an alleged violation of his Second Amendment rights; instead, his sole claim is a statutory claim under § 925A.

(8th Cir. 2021) (citations and quotation marks omitted). The Eighth Circuit has not explained what it means by "slightly less onerous," but it does not matter, as the issue in this case is not close: It is "absolutely clear" that the FBI cannot reasonably be expected again to deny permission to Roehning to purchase a firearm on the basis of his misdemeanor conviction.

The FBI's initial denial of Roehning's firearm transfer "was obviously a mistake." *Mo. Protection and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007). Roehning was initially denied the right to purchase a firearm because a *state* agency—the MBCA—had characterized his misdemeanor conviction as a felony. The FBI discovered that error. The FBI asked the MBCA to correct its records, which it did. The FBI corrected its own records. The FBI double checked its work by running another background check on Roehning to verify that no disqualifying information was reported. *See* Cochran Decl. ¶¶ 6–7, 9. And to ensure that Roehning will not have difficulty with future firearms purchases, the FBI provided Roehning with a UPIN and with letters affirming his eligibility to purchase a firearm. *See* Cochran Decl. ¶¶ 7–8; Voss Decl. Exs. 1–3.

There is no hint in the record that the FBI acted in bad faith; no hint that it harbors any ill will against Roehning; no hint that it did anything but rely on mistaken information that the MBCA had entered into a national database. There is no reason to

believe that the MBCA will again characterize Roehning's misdemeanor conviction as a felony and no reason to believe that the FBI will again be misled by such a mistake. Finally, the FBI has given Roehning the tools he needs to ensure that, going forward, he will not again wrongfully be denied a firearm.

For these reasons, the voluntary-cessation exception does not save Roehning's lawsuit from being dismissed as moot.

2. Capable of Repetition Yet Evading Review

Roehning also cites the exception to the mootness doctrine for cases that are capable of repetition yet evading review. That exception "applies only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware Techs.*, 579 U.S. at 170 (cleaned up). "The party need not show with certainty that the situation will recur, but a mere physical or theoretical possibility is insufficient to overcome the jurisdictional hurdle of mootness." *Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995).

This case satisfies neither condition. The Court has already explained why there is no "reasonable expectation that [Roehning] will be subject to the same action again." *Kingdomware Techs.*, 579 U.S. at 170 (cleaned up). And there is nothing fleeting about

either the denial of permission to purchase a firearm or the desire of the thwarted purchaser to consummate the transaction. The denial will normally stand, the thwarted purchaser will normally sue, and nothing will change as the litigation wends its way toward a conclusion. *See, e.g., Smith v. United States*, No. 21-cv-1574 (ECT/ECW), 2021 WL 5216907 (D. Minn. Nov. 9, 2021), *aff'd* No. 22-1053, 2023 WL 2604965 (8th Cir. Mar. 23, 2023). Thus, this case is nothing like, say, a challenge to an imminent election, *see Van Bergen*, 59 F.3d at 1547 (explaining that "[e]lection issues are among those most frequently saved from mootness by this exception" because elections "are almost invariably of too short a duration in which to complete litigation and, of course, recur at regular intervals"), or a challenge to a court order barring access to a criminal trial, *see Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596 (1982) (holding newspaper's challenge to order excluding press and public from criminal trial that had ended during pendency of the litigation to be within "capable of repetition" exception).

For these reasons, this Court holds that Roehning's challenge to the government's refusal to approve his purchase of a firearm is moot. The Court notes that, to its knowledge, every federal judge who has presided over a § 925A action involving similar facts has likewise dismissed the action as moot. *See, e.g., Melton v. United States*, No. 4:21-cv-00095-GHD-JMV, 2022 WL 2821540, at *2 (N.D. Miss. July 19, 2022) (finding that "because there is no longer any information in the NICS database

-11-

that will prevent the Plaintiff from purchasing a firearm, and the Plaintiff has recently successfully completed the firearm purchase that was the subject of his amended complaint, the Plaintiff has received the relief he sought in this litigation and no case or controversy presently exists," and collecting cases); *Bowen v. United States*, No. 6:19-cv-9, 2021 WL 5162584, at *4 (S.D. Ga. Nov. 5, 2021) (finding similar § 925A claim moot and collecting cases); *McKay v. New York*, 16-CV-6834-FPG, 2018 WL 1046792, at *4 (W.D.N.Y. Feb. 26, 2018) (finding § 925A claim moot where "Plaintiff has already received the entirety of her requested relief—the State has corrected her classification and communicated that change to the federal government"); *Perron v. Fed. Bureau of Investigation*, No. C17-215 RAJ, 2018 WL 835713, at *2 (W.D. Wash. Feb. 13, 2018) (finding § 925A claim moot where "Defendant represents that after reviewing the information in the NICS database, it has been determined that Plaintiff is able to purchase a firearm, and there is no information in the NICS databases that would prevent him from doing so").

### C. Attorney's Fees

Roehning argues that, if his lawsuit has indeed become moot because the government gave him the relief that he sought, the government did so only because he filed this lawsuit, and thus he should be considered a "prevailing party" who is entitled to an award of attorney's fees under § 925A. *See* 18 U.S.C. § 925A ("In any action under

this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs."). If the Court were writing on a clean slate, the Court might agree with Roehning. Unfortunately for Roehning, however, the Court is not writing on a clean slate.

In *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Hum. Res.*, 532 U.S. 598 (2001), the Supreme Court interpreted materially identical "prevailing party" language in the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3613(c)(2) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs."), and in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205 ("[T]he court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."). The Supreme Court firmly rejected the "catalyst theory"—that is, the argument (made by Roehning in this case) that "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601. In order to be a "prevailing party," the Court held, the plaintiff must be "awarded some relief *by the court*." *Id.* at 603 (emphasis added). The Court explained:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without*

>    a corresponding alteration in the legal relationship of
>    the parties.

*Id.* at 605.

Roehning points out that *Buckhannon* interpreted the phrase "prevailing party" in the FHAA and ADA, but did not interpret the same phrase in § 925A.  That is true, of course, but Roehning provides no reason to believe that either the Supreme Court or the Eighth Circuit would find that "prevailing party" means one thing in the FHAA and ADA and something different in § 925A.  *Buckhannon* itself signaled that its holding applies to *all* federal statutes that condition the award of attorney's fees on being a "prevailing party":

>    *Numerous federal statutes* allow courts to award attorney's
>    fees and costs to the "prevailing party."  The question
>    presented here is whether this term includes a party that has
>    failed to secure a judgment on the merits or a court-ordered
>    consent decree, but has nonetheless achieved the desired
>    result because the lawsuit brought about a voluntary change
>    in the defendant's conduct.  We hold that it does not.

*Id.* at 600 (emphasis added); *see also id.* at 610 (referring to "the clear meaning of 'prevailing party' in the fee-shifting *statutes*") (emphasis added).  And the Eighth Circuit has explicitly said that "[a]lthough the statute at issue in *Buckhannon* was a provision of the Fair Housing Act, the Court's analysis applies generally to fee shifting statutes incorporating the 'prevailing party' language."  *Advantage Media, L.L.C. v. City of Hopkins*, 511 F.3d 833, 837 (8th Cir. 2008) (interpreting 42 U.S.C. § 1988).

Finally, Roehning makes a policy argument: He says that if attorney's fees are not available under these circumstances, then attorneys will be less willing to represent plaintiffs such as Roehning, and that, in turn, will result in less enforcement of the rights protected by § 925A. The Court does not disagree. The problem is that precisely the same argument could be made about the rights protected by the FHAA, and the rights protected by the ADA, and the rights protected by 42 U.S.C. § 1988, and the rights protected by the many other federal statutes that include a "prevailing party" provision. Those rights are no less important than the rights protected by § 925A. Yet the "catalyst" theory was rejected by *Buckhannon* and has been consistently rejected by the federal courts since *Buckhannon*. Roehning is not entitled to an award of attorney's fees.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss [ECF No. 7] is GRANTED; and
2. Plaintiff's complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 28, 2023              s/Patrick J. Schiltz
                                   Patrick J. Schiltz
                                   United States District Judge